UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:11CR481 SNLJ |
| ) | (FRB) |
| RAY BASSETT, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM,**
**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Defendant Ray Bassett filed several pretrial motions. The motions were heard before the undersigned on March 6, 2012. Following the hearing the undersigned ordered that a written transcript of the proceedings be prepared and filed with the court. The transcript was filed on March 12, 2012. The undersigned has relied upon the written transcript as well as the electronic digital recording made of the proceedings in making findings of fact set out herein.

   1. <u>Defendant Ray Bassett's Motion To Suppress Statements</u>
      (Docket No. 88)

Testimony and evidence was adduced on the defendant's motion at the hearing before the undersigned on March 6, 2012. From the testimony and evidence adduced at the hearing the

undersigned makes the following findings of fact and conclusions of law.

## Findings of Fact

From a review of the defendant's motion as well as the government's response thereto it appears that the government intends to offer in evidence at trial certain audio recordings of telephone conversations between defendant Ray Bassett and Otis McAllister. These conversations took place while Otis McAllister was confined serving a sentence at a United States Bureau of Prisons (BOP) correctional institution.

It is the policy of the BOP to monitor and audio record telephone conversations between inmates in BOP facilities and persons outside the prison facilities to whom the inmates place telephone calls. Inmates are informed of this policy upon entering a BOP facility to begin serving a sentence through the use of an "Admissions & Orientation Booklet". Section 3 of the Booklet is captioned "Monitoring Of Inmate Telephone Calls" and sets forth the BOP policy, stating in part that "The Bureau of Prisons reserves the authority to monitor (this includes recording) conversations on any telephone located within the institutions, said monitoring being done to preserve the security and orderly management of its institutions and to protect the public. An inmate's use of institutional telephones constitutes consent to this monitoring." (See Government's Exhibit R-2). A notice of this policy is posted

at telephones located within BOP facilities which inmates use to place telephone calls. (See Government's Exhibits R-5 and R-6). On March 4, 2009, Otis McAllister acknowledged having received a copy of the BOP "Admissions & Orientation Booklet" (See Government's Exhibit R-1) and acknowledged that he had read the notification on the monitoring of inmate telephone calls and signed a form stating "I understand that telephone calls I make from institution telephones may be monitored and recorded." (See Government's Exhibit R-2). Otis McAllister made similar acknowledgments on previous occasions while confined in BOP facilities. (See Government's Exhibits R-3 and R-4).

On November 4, 2011, defendant Ray Bassett was arrested and later charged with conspiracy to commit bank robbery. Following his arrest Bassett was interviewed by Agent William Meyers of the Federal Bureau of Investigation (F.B.I.). Also present during the interview was Detective Mike Spreck of the St. Louis Police Department, who is assigned as a task force officer with the F.B.I. The interview took place at the F.B.I. office in St. Louis, Missouri. Prior to the interview Agent Meyers advised Bassett of the Miranda warnings by reading them to Bassett from a preprinted form. Specifically Agent Meyers told Bassett that he had the right to remain silent; that anything he said could be used against him in court; that he had the right to talk to a lawyer before questioning; that he had the right to have a lawyer present during questioning; that if he could not afford a lawyer one would

be appointed for him before questioning if he wished; and that if he chose to answer questions without a lawyer present, he could stop answering at any time. Agent Meyers then read to Bassett that portion of the form which states "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." Bassett then signed the form. Bassett told Agent Meyers that he was blind in one eye. Agent Meyers noticed that Bassett leaned very close to the form when signing and it appeared that he had difficulty in seeing the form. Bassett also told Agent Meyers that he had driven a car to St. Louis from Memphis, Tennessee, earlier in the week.

At the conclusion of the interview Agent Meyers asked for, and Bassett gave, consent to search a cellular telephone which had been seized from Bassett, Bassett also signed a written form consenting to a search of the telephone. (See Government's Exhibit R-8).[1]

No threats or promises were made to Bassett in order to induce him to waive any of his rights or to make any statement, although Agent Meyers did tell Bassett that if he cooperated in the investigation, that fact would be made known to the United States Attorney's office. At the time of the interview Bassett was 41 years of age. He did not appear to be under the influence of drugs or alcohol. In addition Bassett had a past history of contact with

---

[1] Bassett has not filed a motion to suppress any evidence found in the search of this telephone.

and involvement in the criminal justice system, of which Agent Meyers was aware. At no time before or during the interview did Bassett ask to speak to a lawyer or say that he did not wish to answer questions.

### Discussion

In his motion the defendant seeks to suppress the contents of any audio tape recorded statements made by him in telephone conversations with Otis McAllister. He claims that he had a reasonable expectation of privacy in these conversations and that no warrant was issued for the monitoring or recording of these telephone calls. This claim has no merit. The evidence shows that the telephone calls were monitored and recorded with the express consent of Otis McAllister, one of the parties to the conversations. Therefore, the conversations were lawfully overheard and recorded. See 18 U.S.C. § 2511(2)(c); United States v. White, 401 U.S. 745 (1971); United States v. Horr, 963 F.2d 1124, 1125-26 (8th Cir. 1992).

As grounds to suppress the statements made by him to Agent Meyers on November 4, 2011, the defendant asserts in his motion that he requested to speak with a lawyer prior to questioning but that his request was denied.

In Miranda v. Arizona, 384 U.S. 436 (1966) the Supreme Court held that before questioning a person in custody law enforcement officials must advise the person that he has the right to remain silent; that any statements he makes may be used against

him at trial; that he has the right to have an attorney present during questioning; and that if he cannot afford an attorney one will be appointed for him. Id. at 478-79. The officials may question the person after so advising him if the person voluntarily, knowingly and intelligently waives these rights and agrees to answer questions put to him by the officials. Absent such advice and waiver, statements obtained through interrogation of a person in custody are not admissible against the person at trial. Id. at 479.

The defendant's claim that he asked to speak with a lawyer before questioning, and that his request was denied, is not supported by the credible evidence adduced at the hearing. Indeed, the claim is refuted by that evidence. Agent Meyers testified that the defendant did not ask to speak to a lawyer at any time. The advice and waiver of rights form signed by the defendant states that he is willing to answer questions without a lawyer present. Such a written acknowledgment is "strong proof" of the defendant's knowledge of his rights and "the validity of the waiver" of those rights. North Carolina v. Butler, 441 U.S. 369, 373 (1979).

The defendant also claims in his motion that his statements to Agent Meyers were "involuntary and were elicited without defendant being fully aware of his rights pursuant to Miranda". Again, this assertion is not supported by the evidence adduced at the hearing. As discussed above, the defendant was fully and properly advised of the Miranda rights and acknowledged

such in writing. He further waived those rights, again in writing. "Cases in which a defendant can make a colorable argument that a self incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Berkemer v. McCarthy, 468 U.S. 420, 423 (1984). "The fact that such warnings were given weighs in favor of a voluntariness finding." United States v. Mendoza, 85 F.3d 1347, 1350 (8th Cir. 1996).

Further, the fact that Agent Meyers told Bassett that if he cooperated such cooperation would be made known to the prosecutor did not render the defendant's statement involuntary. United States v. Gaines, 295 F.3d 293, 299 (2nd Cir. 2002). The defendant's statements were not the result of any threats, promises, or other form of coercion by the officer such as would overbear the will of the defendant. Colorado v. Connelly, 497 U.S. 157 (1986).

## Conclusion

For all of the above reasons the defendant's Motion To Suppress Statements should be denied.

2. Defendant's Motion For Severance (Docket No. 86)

The defendant seeks a separate trial from his co-defendants. As grounds for his motion he avers as follows:

1. Co-defendants made statements to law enforcement officials which may be admissible as to those defendants but not as to this defendant.

2. That at a joint trial he would be prevented from calling any of the co-defendants as a witness in his defense.

3. That one or more of his co-defendants might elect to testify in their own defense and that this defendant might elect not to testify in his own behalf, and that the jury might draw an adverse inference from such circumstances.

The defendant asserts that co-defendants may have made statements to law enforcement officials concerning their involvement in the matters alleged in the indictment and which are prejudicial to him. The Supreme Court in <u>Bruton v. United States</u>, 391 U.S. 123 (1968), held that a defendant is deprived of his right to confront witnesses against him when the confession of a co-defendant which incriminates the defendant is admitted at trial. In <u>Cruz v. New York</u>, 481 U.S. 186 (1987), the Court held that this is so even when the defendant's own incriminating statement is admitted at the trial. In that same term however, the Court went on to recognize a limited exception to the rule set out in <u>Bruton</u>. In <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987), the Court held that when a co-defendant's statement is redacted to eliminate any reference not only to the defendant's name, but any reference to his or her existence, then there is no violation of the confrontation clause, provided that proper limiting instructions are given. The government in the instant case proffers that they can and will redact any statements offered in evidence to fall within the narrow constraints of <u>Marsh</u>. Provided that they do,

severance is not warranted on the basis that statements of co-defendants might be admitted at trial.

The defendant also alleges that at a joint trial he would be prevented from calling co-defendants as witnesses if they are tried together. In order to support a request for severance on such claims, the defendant must show 1) that he would call the co-defendant as a witness at a separate trial, 2) that the co-defendant would testify at this trial and 3) that the testimony of the co-defendant would be exculpatory. United States v. Voss, 787 F.2d 393, 401 (8th Cir.), cert. denied, 479 U.S. 888 (1986). The defendant has not met these requirements and has not shown by proffer, affidavit or otherwise that any co-defendant would testify or that his testimony would be exculpatory. Under the circumstances, such speculative allegations do not serve as grounds for severance.

The defendant also asserts that at a joint trial, a co-defendant might elect to testify and that this defendant might elect not to testify and that, if this occurs, the jury might draw adverse inferences as a result of this defendant's failure to testify. These assertions are entirely speculative and therefore do not serve as any basis on which to grant a separate trial. Further, should such circumstances arise, the Court may give cautionary instructions to the jury regarding its consideration of the evidence as to each defendant and that no inference may be drawn from the defendant's failure to testify. See, e.g., Manual

of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit, §§2.14 and 4.01; United States v. Robinson, 774 F.2d 261, 266 (8th Cir. 1985); United States v. Hodges, 502 F.2d 586, 587 (5th Cir. 1974).

Therefore, the defendant's motion should be denied.

3. Defendant's Motion To Dismiss Indictment Due To Entrapment And Outrageous Governmental Conduct
(Docket No. 87)

In his motion the defendant claims that Otis McAllister, an inmate serving a federal prison sentence fabricated a plan to entice defendant Ray Bassett into committing a bank robbery and that government agents were aware of, and assisted and participated in the plan. In its response to the defendant's motion the government disputes the defendant's claim and denies that it acted in any way in concert with Otis McAllister to involve the defendant in any conspiracy or attempt to rob a bank. Rather, the government asserts that agents of the Federal Bureau of Investigation (F.B.I.) merely became aware of the planned bank robbery through information provided by Otis McAllister and stepped in to prevent the robbery before it could occur.

Entrapment is an affirmative defense. In asserting such a defense the defendant has the burden of showing the he was induced to commit the offense through the conduct of government agents. United States v. Young, 613 F.3d 735, 746-47 (8th Cir. 2010). Inducement exists when the government implanted the criminal design in the defendant's mind. Id. at 747 (Internal

-10-

quotes and citations omitted). Once the defendant meets his burden of showing such government inducement the burden shifts to the government to demonstrate beyond a reasonable doubt that the defendant was predisposed to commit the crime. The predisposition element focuses upon whether the defendant was an unwary innocent or, instead an unwary criminal who readily availed himself of the opportunity to perpetrate the crime. <u>Id.</u> (Internal quotes and citations omitted).

"E"ntrapment is a question of fact and generally decided by a jury." <u>Id.</u> at 746; <u>Matthews v. United States</u>, 485 U.S. 58 (1988). Most courts have avoided deciding entrapment issues on pretrial motions to dismiss. <u>United States v . Fadel</u>, 844 F.2d 1425, 1430 (10th Cir. 1988). "The reasons for such a preference are grounded in the fact that the defense of entrapment is intertwined with the issue of intent and is typically based upon credibility determinations, an area traditionally reserved for jury resolution." <u>Id.</u> A review of the defendant's motion and the government's response, all that is before the court at this time, readily shows that the case is replete with factual disputes with respect to both the "inducement" and "predisposition" aspect of the entrapment issues, making the issue inappropriate for pretrial resolution.

Likewise, because there are numerous factual disputes as alleged in the defendant's motion and the government's response thereto that it is impossible for the court to conclude at this

-11-

time that the government's conduct in this case was so outrageous as to merit dismissal of the indictment at this time. See, United States v. Russell, 411 U.S. 423, 431-32 (1973); United States v. Berg, 178 F.3d 976, 979 (8th Cir. 1999).

### Conclusion

For all of the foregoing reasons the defendant's Motion To Dismiss Indictment Due To Entrapment And Outrageous Governmental Conduct should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Ray Bassett's Motion To Suppress Statements (Docket No. 88) be denied.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion For Severance (Docket No. 86) be denied.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion To Dismiss Indictment Due to Entrapment And Outrageous Governmental Conduct (Docket No. 87) be denied.

The parties are advised that they have until **April 27, 2012,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).


UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of April, 2012.